UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD VAUGHN,
VALERIE JENKINS,

                 **Plaintiffs,**

-vs-                                                               **Case No.  6:07-cv-1695-Orl-19UAM**

CITY ORLANDO,
ORLANDO POLICE DEPARTMENT,
OFFICER DENNIS R. SMITH,
                   **Defendants.**
_____

## ORDER

This case comes before the Court on the following:

1.      Amended Motion to Dismiss and Incorporated Memorandum of Law of Defendants (Doc. No. 15, filed Nov. 2, 2006);

2.      Notice of Clarification of Assertion of Defendants (Doc. No. 16, filed Nov. 8, 2007); and

3.      Response of Plaintiffs to Defendants, City of Orlando, Orlando Police Department, and Officer Dennis R. Smith's Amended Motion to Dismiss (Doc. No. 20, filed Nov. 16, 2007).

### Background

Plaintiffs Richard Vaughn and Valerie Jenkins, in their individual capacity and as co-personal representatives of the Estate of Officer Mario Jenkins, filed the underlying two-count Complaint against Defendants Dennis R. Smith, the City of Orlando and the Orlando Police Department ("OPD") for violations of their own and Officer Jenkins's civil rights pursuant to 42 U.S.C. Section 1983 ("Section 1983"). (Doc. No. 1). Plaintiffs allege that Defendants violated their

First, Fourth and Fourteenth Amendment rights.  (*Id.* at ¶ 1).    The relevant allegations are summarized below.

On September 25, 2005, Plaintiffs allege that the deceased Mario Jenkins was working as an undercover police officer.  (*Id.* at ¶ 12).  While working undercover, Officer Jenkins apprehended two suspects.  (*Id.* at ¶ 14).  When Defendant Smith approached the scene, Officer Jenkins was holding his police badge and attempting to arrest the two suspects. (*Id.* at ¶¶ 16-18).  Without warning, Defendant Smith fired three shots into Officer Jenkins's back which resulted in Officer Jenkins's death.  (*Id.* at ¶ 19).  Plaintiffs contend that Defendant Smith's actions constituted an excessive use of deadly force because Officer Jenkins did not pose a reasonable threat to Smith or any other person.  (*Id.* ¶ 21).  Plaintiffs contend that Defendant Smith "failed to undertake any actions, investigation, or inquiry that would have allowed him to reasonably assess the situation prior to employing deadly force."  (*Id.* at ¶ 22).  According to Plaintiffs, "a reasonable police officer [should have been able] to realize that Officer Jenkins was a fellow officer engaged in the lawful performance of his duties" because Officer Jenkins was: (1) apprehending the suspects the police were chasing; (2) using recognizable police techniques such that any reasonable officer would have recognized him; and (3) another officer on the scene told Defendant Smith that Officer Jenkins was a police officer.  (*Id.*)  Plaintiffs contend that "Defendant City of Orlando had provided Defendant Smith with no training on how to recognize an undercover or plainclothes officer, that the OPD's policies and procedures concerning the identification and safety of officers working undercover or in plainclothes were clearly inadequate or non-existent."  (*Id.* at ¶ 26).

Count I asserts a claim against Defendant Smith.  (Doc. No. 1, ¶¶ 29-33).  Count II asserts a claim against Defendants the City of Orlando and OPD.  (Doc. No. 1, ¶¶ 34-40).  All three

Defendants filed one motion to dismiss Plaintiffs' claims. (Doc. No. 15). Defendants contend that: (1) Plaintiffs' allegations with respect to the City of Orlando are conclusory and should be dismissed as a shotgun pleading; (2) OPD is not a proper party to the suit; and (3) Defendant Smith did not violate Plaintiffs' constitutional rights and is protected by qualified immunity in the claims based on Officer Jenkins' civil rights.  (*Id.*)   Plaintiffs oppose Defendants' motion.  (Doc. No. 20).

### Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 12(d); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

### Analysis

**I.      Count I: Plaintiffs' Claim Against Defendant Smith**

Section 1983 provides a remedy for the deprivation, under color of state of authority, of a right guaranteed by the "Constitution and laws" of the United States.  42 U.S.C. § 1983.  The Eleventh Circuit applies a heightened pleading standard to Section 1983 claims against defendants such as government officials in their individual capacities who can assert a qualified immunity defense.  *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).  In order to state a claim, a plaintiff must "allege with some specificity the facts which make out its claim."  *GJR*

*Invs., Inc. v. County of Escambia, Fla.*., 132 F.3d 1359, 1367 (11th Cir. 1998).  In such cases, a plaintiff must allege a the defendant's conducted violated a "clearly federal established right."  *Id.* at 1366-67.

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotations omitted).  Thus, a court should address the applicability of a qualified immunity defense as soon as practicable.  *See id.* at 201.  When analyzing the issue of qualified immunity, a district court must follow a three step process.  *Id.*  First, the court must determine whether the allegations, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right.  *Id.*  If the initial question is answered in the negative, the inquiry ends.  *Id.*  However, if the allegations establish a constitutional violation, the court must then determine if the right is clearly established. *Id.*  A right is clearly established if  "[t]he contours of the right [are] sufficiently clear [whereby] a reasonable official would understand that what he is doing violates that right." *Id.* at 202.  Only after the court has determined that the allegations establish a violation of a clearly established right may the court determine whether the officer's actions were objectively reasonable.  *See id.* at 201. Qualified immunity ceases to apply if the officer's conduct was unlawful based upon the circumstances of the particular case.  *See id.*

Plaintiffs contend that they suffered the following deprivations of their constitutional rights: (1) right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments; (2) right to be free from excessive and unreasonable force in the course of arrest or detention pursuant

to the Fourth and Fourteenth Amendments; (3) "right to be free from the use of lawful [sic][1] deadly force under as secured by the Fourth and Fourteenth Amendments"; and (4) "right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship and society of their husband and father, as secured by the First, Fourth and Fourteenth Amendments."  (Doc. No. 1, ¶¶ 30).  The first three alleged constitutional violations pertain to the rights of Officer Jenkins, whereas the last relates to violations of Plaintiffs' own rights.

### A.      Plaintiffs' Claims Based on the Violation of Officer Jenkins's Rights

The Fourth Amendment gives an individual the rights to be free from unreasonable seizures, excessive and unreasonable force in the course of arrest, and unlawful deadly force.  *E.g., Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992) (The Fourth Amendment protects people against unreasonable seizures of their persons, houses, papers, and effects.); *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ."); *Tennessee v. Gardner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").

> Deadly force is reasonable for the purposes of the Fourth Amendment when an officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

---

[1]      The Court will presume that the Plaintiffs are alleging a deprivation of their constitutional right to be free from unlawful deadly force. (Doc. No. 1, ¶ 30).

*Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005)(quotation omitted), cert. denied 546 U.S. 1109 (2006).

Plaintiffs have alleged that Defendant Smith shot Officer Jenkins, irrespective of the fact that he had no basis to reasonably believe that Officer Jenkins posed a threat of physical harm to him or any other person, and failed to give adequate warning, even though giving such a warning was feasible. (Doc. No. 1, ¶¶ 19, 21, 24). According to Plaintiffs, a reasonable police officer should have known the use of deadly force was illegal under the circumstances because Officer Jenkins was: (1) apprehending the suspects the police were chasing; (2) using recognizable police techniques; and (3) another officer on the scene told Defendant Smith that Officer Jenkins was a policeman. (*Id.* at ¶ 22). Plaintiffs have alleged that Defendant Smith's actions were unreasonable under the circumstances and violated Officer Jenkins's clearly established constitutional rights.

### B.      Plaintiffs' Claims Based on the Violation of Their Own Rights

With respect to Plaintiffs' alleged constitutional violation of their own rights, Plaintiffs give no explanation as to which First, Fourth or Fourteenth Amendment rights they refer and cite no case law in support of their general contention. (Doc. No. 1, ¶ 30(d); Doc. No. 20). However, the Fourteenth Amendment incorporates both the First and Fourth Amendments against the states. *E.g., Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n. 9 (11th Cir. 2004) (Fourth Amendment is incorporated against the states by the Fourteenth Amendment); *Holloman ex rel Hollomon v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004) (First Amendment is incorporated against the states by the Due Process Clause of the Fourteenth Amendment). Thus, the Court will consider whether Plaintiffs have pled a violation of their own First or Fourth Amendment rights.

The Fourth Amendment protects the rights of individuals to be free from unreasonable searches and seizures of their person, house, papers and effects.  *E.g.*, *Soldal*, 506 U.S. at 61; *see also* U.S. Const. amend. IV.  The Fourth Amendment is a personal right which may not be asserted vicariously.  *Crosby v. Paulk*, 187 F.3d 1339, 1346 n. 10 (11th Cir. 1999).  Plaintiffs' factual allegations pertain solely to Defendant Smith's actions toward Officer Jenkins and do not assert that Plaintiffs themselves were subjected to a search or seizure.  (Doc. No. 1).  Therefore, Plaintiffs have failed to allege a violation of their Fourth Amendment rights.

A person's First Amendment right to freedom of association protects intimate association and includes a right to be free from undue government intrusion into "the personal relationships that attend the creation and sustenance of a family-marriage. . . ."  *Cummings v. DeKalb County,* 24 F.3d 1349, 1354 (11th Cir. 1994); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994).  However, the factual allegations of the Complaint fail to discuss Plaintiffs themselves or explain how their rights were violated.  (*See* Doc. No. 1).  Plaintiffs merely assert that Defendant Smith's actions violated their "right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship and society of their husband and father, as secured by the First, Fourth and Fourteenth Amendments" because his actions toward Officer Jenkins were done with "conscious and reckless disregard" for the fact that Plaintiffs rights would be violated.  (*See id.* at ¶¶ 30, 31).  Applying the Eleventh Circuit's heightened pleading standard, Plaintiffs have failed to plead specific facts to state a violation of their own constitutional rights.

Even assuming that Plaintiffs have plead a violation of their individual First and Fourteenth Amendment rights, without specific factual allegations pertaining to Plaintiffs or the alleged deprivation of their rights, it is impossible to determine that such a right is clearly established.

Section 1983 claims asserting the deprivation of an individual's rights because of the death of a family member are not recognized in all circumstances.  For instance, in *Robertson v. Hecksel*, 420 F.3d 1254, 1255-56 (11th Cir. 2005), a mother sued the city and a police officer in her individual capacity under Section 1983 alleging that the officer's wrongful shooting of her adult son during a traffic stop violated her liberty interest in a continued relationship with her son.  The Eleventh Circuit affirmed summary judgment against the mother and held that "the Fourteenth Amendment's substantive due process protections do not extend to the relationship between a mother and her adult son. . . ."  *Id.* at 1255.   In reaching its decision, the Eleventh Circuit noted that multiple other circuits have refused to recognize similar due process claims where "the alleged deprivation was incidental to the defendant's actions."  *Id.* at 1258.  The Eleventh Circuit also cited the Tenth Circuit's decision in *Trujillo v. Bd.of County Comm'rs of the County of Santa Fe,* 768 F.2d 1186 (10th Cir. 1985), which held that the First and Fourteenth Amendment protected a mother and daughter's rights to association with their son and brother but required the plaintiffs to show that the state actor had an intent to interfere with the relationship at issue.  *Id.* at 1258 n. 3.  Thus, Plaintiffs' Complaint fails to allege a violation of their clearly established constitutional rights, and Plaintiffs' individual capacity claims against Defendant Smith must be dismissed.

Accordingly, Defendant Smith's motion to dismiss must be denied with respect to Plaintiffs' claims that assert Officer Jenkins's rights and granted with respect to Plaintiffs' claims that assert their own rights.

II.     **Count II:  Plaintiffs' Claim Against the City of Orlando and OPD**

A.     **Plaintiffs' Claim Against the Orlando Police Department**

OPD contends that it is not a proper party to a Section 1983 claim and must be dismissed from Plaintiffs' suit.  (Doc. No. 15).  Only legal entities are subject to suit under Section 1983.  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  Police departments and sheriffs offices are generally not legal entities subject to suit.  *Id.*  However, the capacity to be sued is determined based on the law of the state in which the court is located.  *Id.*; *see also* Fed. R. Civ. P. 17(b).  Under Florida law, a city police department generally does not have the capacity to sue or be sued because it is merely "the vehicle through which the city government fulfills its policing functions. . . ." *Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995).   In the City of Orlando, the Mayor is the executive officer of the city and is responsible for enforcing the laws.  Orlando, Fla., Charter, ch. 2, §3.  The Mayor appoints the Chief of Police subject to the approval of the City Council.  *Id.*; Orlando, Fla., City Code, § 2.35.  Although the Chief of Police is responsible for supervising the police force, the police department is considered part of the city government, and the police chief acts under the direction of the Mayor and City Council.  *Id.*; Orlando, Fla., City Code, § 48.01.  Thus, OPD is merely an agent of the city and is not a legal entity subject to suit.  Consequently, OPD's motion to dismiss Count II must be granted.

B.     **Plaintiffs' Claim Against the City of Orlando**

Under Section 1983, a municipality cannot be held liable for the actions of its employees on a respondeat superior basis.  *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  To state a cause of action against a municipality, a plaintiff must allege: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted

deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  Section 1983 claims against municipalities, which cannot raise qualified immunity as a defense, must only meet the basic requirements of Rule 8(a) and are not subject to a heightened pleading standard.  *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).

Plaintiffs contend that Officer Jenkins suffered the following deprivations of his constitutional rights: (1) right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments; (2) right to be free from excessive and unreasonable force in the course of arrest or detention pursuant to the Fourth and Fourteenth Amendments; (3) right to be free from the use of unlawful deadly force under the Fourth and Fourteenth Amendments.   (Doc. No. 1, ¶¶ 30, 38).   Individuals have constitutional rights to be free from unreasonable seizures, excessive or unreasonable force in the course of arrest or detention, and unlawful deadly force.  *E.g., Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Gardner*, 471 U.S. 1, 7 (1985).  Therefore, Plaintiffs have asserted violations of Officer Jenkins's constitutional rights.

Plaintiffs allege that the unconstitutional acts:

were pursuant to the following customs, policies, practices, and/or procedures of the OPD, state in the alternative, which were directed, encourage[d], allowed, and/or ratified by policy making officers for the City of Orlando and the OPD:
. . .
c.    To fail to institute and require proper and adequate training, police and procedures concerning officers' identification and recognition of undercover or plainclothes officers for the safety of undercover/plainclothes officers and others;
d.    To fail to institute and require proper and adequate training, police and procedures concerning the safety of undercover and plainclothes officers'. . . .

(*Id.* at ¶ 35).  Plaintiffs contend that these unconstitutional policies caused the deprivation of Officer

Jenkins's constitutional rights.  (*Id.* at ¶ 38).

With respect to the policies alleged in paragraphs 35(c) and 35(d) of the Complaint, "'the

inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train

amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"

*Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton v. Harris*, 489

U.S. 378, 388-89 (1989)).  In order to establish deliberate indifference, "a plaintiff must present some

evidence that the municipality knew of a need to train and/or supervise in a particular area and the

municipality made a deliberate choice not to take any action."  *Id.*  Generally, a municipality cannot

be liable for failure to train unless it has notice of the need to train or supervise in a particular area.

*Id.* at 1351.  However, when "the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, . . . the policymakers of the city

can reasonably be said to have been deliberately indifferent to the need."[2]  *City of Canton*, 489 U.S.

at 390.  In such cases, "the failure to provide proper training may fairly be said to represent a policy

for which the city is responsible, and for which the city may be held liable if it actually causes

injury."  *Id.*

Construing all allegations in favor of the Plaintiffs, Plaintiffs have alleged the City of

Orlando's policy of failing to train its police officers caused the deprivation of Officer Jenkins's

constitutional rights and resulted in the unlawful shooting of Officer Jenkins.  Thus, Plaintiffs have

asserted a cognizable Section 1983 claim against the City of Orlando for the violation of Officer

---

[2]      For example, if a city equips its police officers with firearms, the failure to train
police officers on the constitutional limits on the use of deadly force would constitute deliberate
indifference to citizens' constitutional rights.  *See City of Canton*, 489 U.S. at 390 n. 10.

Jenkins's constitutional rights.[3]  However, because Plaintiffs have failed to plead a violation of their own rights, *supra Analysis-Part I.B*, there is no basis to consider Plaintiffs' individual claims against the City of Orlando.  *E.g.,  Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."), *cert. denied* 522 U.S. 966 (1997); *Vineyard v. County of Murray, Ga.*, 991 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise."), *cert. denied* 510 U.S. 1024 (1993). Therefore, Plaintiff's individual capacity claims against the City of Orlando must be dismissed.

## Conclusion

Based on the foregoing, the Court:

1.    Defendant Smith's Motion to Dismiss is **DENIED** with respect to Plaintiffs' claims asserting Officer Jenkins's rights and **GRANTED** with respect to Plaintiffs' claims asserting their individual rights;

2.    Defendant Orlando Police Department's Motion to Dismiss is **GRANTED**; and

3.    Defendant the City of Orlando's Motion to Dismiss is **DENIED** with respect to  to Plaintiffs' claims asserting Officer Jenkins's rights and **GRANTED** with respect to Plaintiffs' claims asserting their individual rights (Doc. No. 15).

Plaintiffs have leave of Court to file an Amended Complaint which comports with the provisions of this Order within ten (10) days from the date below.

---

[3]      Plaintiffs have adequately pled a Section 1983 claim with respect to the City of Orlando's failure to train.  Therefore, there is no reason to address the balance of Plaintiffs' allegations for the purposes of deciding the instant motion.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 14, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record